| AO 106 (REV 4/10) Affidavit for Search Warrant | AUSA Simar Khera, (312) 353-4317 |
|---|---|

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the Matter of the Search of:   Case No. 23 CR 307

CALVERT WILLIAMS   Judge Matthew F. Kennelly

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Paul Daou, a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person:

CALVERT WILLIAMS

(a black male, approximately 5 foot 9 inches tall, weighing approximately 155 pounds, born on or about May 26, 1989)

located in the Northern District of Illinois, there is now concealed:

### BUCCAL SWAB

The basis for the search under Fed. R. Crim. P. 41(c) is evidence of a crime.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Sections 1951(a), 1201(a)(1), and 924(c)(1)(A) | conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, conspiracy to commit kidnapping, kidnapping, and use of a firearm during a crime of violence |

The application is based on these facts:

**See Attached Affidavit,**

Continued on the attached sheet.

PAUL DAOU

Digitally signed by PAUL DAOU
Date: 2024.06.27 16:27:07 -05'00'

*Applicant's Signature*

PAUL DAOU, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: June 27, 2024

*Judge's signature*

City and State: Chicago, Illinois

MATTHEW F. KENNELLY, U.S. District Judge
*Printed name and title*

UNITED STATES DISTRICT COURT    )
                                         )

NORTHERN DISTRICT OF ILLINOIS    )

### AFFIDAVIT

I, Paul Daou, being duly sworn, state as follows:

1.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. I have been so employed since approximately September 2015.

2.    As part of my duties as an ATF Special Agent, I investigate criminal violations relating to violent crimes, including robberies, robberies affecting commerce, kidnapping, and violations of federal firearms laws.

3.    This affidavit is made in support of an application for search warrants for samples of DNA contained within cheek cells/saliva (buccal swab) of CALVERT WILLIAMS, AHZAMI XHAMILTON, and DERRIUS BURNS.

4.    The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing the requested search warrants, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to obtain search warrants for samples from CALVERT WILLIAMS, AHZAMI XHAMILTON, and DERRIUS BURNS to submit for DNA testing.

## I.    SUMMARY OF PROBABLE CAUSE

5.    The persons to be searched are CALVERT WILLIAMS, a black male, approximately 5 foot 9 inches in height, weighing approximately 155 pounds, and

born on or about May 26, 1989; AHZAMI XHAMILTON, a black male, approximately 5 foot 7 inches in height, weighing approximately 170 pounds, and born on or about July 7, 1995; and DERRIUS BURNS, a black male, approximately 6 foot 1 inch in height, weighing approximately 200 pounds, and born on or about January 2, 1993.

6. In summary, on or about May 18, 2018, WILLIAMS, XHAMILTON, and BURNS kidnapped Victim 1 and Victim 2 and robbed Victim 1. During its investigation, law enforcement recovered a firearm and blue gloves used by the defendants. These items were swabbed for suspect biological evidence. In addition, law enforcement swabbed the steering wheel of the vehicle used in the kidnapping of Victim 1 and Victim 2.

7. WILLIAMS, XHAMILTON, and BURNS were charged by indictment with conspiring to commit Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a); Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a); brandishing a firearm in furtherance of a crime of violence, in violation of Title 18, United States Code, Section 924(c)(1)(A); conspiring to commit kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1); and two counts of kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1) (the "**Subject Offenses**"). *United States v. Williams*, 23 CR 307, R. 1.

8. WILLIAMS is detained and is currently in custody at the DuPage County Sheriff's Office Correctional Facility, located in Wheaton, Illinois in the Northern District of Illinois. XHAMILTON and BURNS are also detained and

currently in custody at the Metropolitan Correctional Center in Chicago, Illinois in the Northern District of Illinois.

9. This application requests a buccal swab from WILLIAMS, XHAMILTON, and BURNS so that the specimens provided by them can be compared to the swabs from evidence collected by law enforcement.

10. Based on my training and experience, I know that a buccal swab is a sterile cotton swab, which is used to collect cheek cells and/or saliva.

## II.    FACTS SUPPORTING PROBABLE CAUSE

### A.    Summary of Victim 1's Statements

11. According to Victim 1, on the evening of May 18, 2018, Victim 1 was driving a rental car—a gray Kia Soul with Indiana license plate FL832ABE—with Victim 2, seated in the passenger's seat. Victim 1 received a phone call from an individual s/he knew as "Neife," who requested to buy marijuana from Victim 1. [1] As discussed in more detail below, Victim 1 later identified Christopher Gregory as the person s/he knew as "Neife."

---

[1] According to Victim 1, in and around May 2018, Victim 1 was selling marijuana, cocaine, and heroin in or around the intersection of West Huron Street and North Pine Street on the west side of Chicago. Victim 1 personally distributed narcotics and managed "workers," who sold Victim 1's narcotics inventory in exchange for a cut of the proceeds. Victim 1 was charged in the Northern District of Illinois with drug trafficking offenses and entered into a plea agreement in which he admitted to the conduct charged in the indictment and agreed to cooperate with the United States. In exchange for his cooperation in that case, as well as his assistance in the instant case, the government moved to dismiss the notice of prior conviction, under Title 21, United States Code, Section 851, and recommended a sentence of 72 months, which was below Victim 1's advisory guidelines range. Victim 1 was ultimately sentenced to 72 months' imprisonment. In addition to his drug trafficking conviction in that case, Victim 1 has prior convictions for controlled substance offenses, gambling, soliciting unlawful business, street gang contact, aggravated battery of an officer, and driving-related offenses.

12. According to Victim 1, per Gregory's direction, Victim 1, accompanied by Victim 2, traveled in the Kia Soul to the intersection of North Lorel Avenue and West Ohio Street. When Victims 1 and 2 arrived at the intersection, Victim 1 called Gregory. Moments later, Gregory approached and immediately entered the Kia Soul's rear passenger's seat, behind Victim 2's seat. After Gregory entered the vehicle, Gregory pointed a large silver firearm at Victim 1. Gregory instructed Victim 1 to take the car keys out of the ignition and drop them on the floorboard. Victim 1 understood that s/he was being robbed. Victim 1 gave Gregory his/her Louis Vuitton bag—which contained approximately $1,600 in United States currency and a half pound of marijuana.

13. According to Victim 1, shortly thereafter, "Little Boy," who, as described in more detail below, Victim 1 later identified as WILLIAMS, and DERRIUS BURNS, whom Victim 1 also knew as "Papa," entered the car. Both men were armed. BURNS pushed a black firearm into Victim 1's ribcage and started rifling through Victim 1's pockets. BURNS took an unknown amount of United States currency from Victim 1's front pocket.

14. According to Victim 1, after BURNS took the money from Victim 1's front pocket, WILLIAMS demanded cash and "the dope." Victim 1 told WILLIAMS and the other offenders that there might be money and drugs at Victim 1's residence near the intersection of North Lawndale Avenue and West Augusta Boulevard.

15. According to Victim 1, in summary, the kidnappers drove his Kia Soul and followed a Kia truck, to Victim 1's residence. There, the driver of the Kia truck,

later identified as XHAMILTON, motioned for Victim 1 to exit the vehicle. Victim 1 complied, exiting the vehicle with his/her hands above his/her head. According to Victim 1, WILLIAMS and BURNS held Victim 1 at both sides of his/her body while the driver of the Kia truck walked behind Victim 1 pointing a gun at Victim 1's back. Gregory stayed in the Kia Soul with Victim 2 still seated in the passenger's seat.

16. According to Victim 1, the group approached the front door to the residence and rang the doorbell. One of the offenders shouted, "if you don't open the door, we are going to kill [Victim 1] right here." Victim 1 then said, "hey [Individual A], open the door. You know they gonna kill me." Individual A complied and opened the door into the stairwell of the residence. According to Victim 1, when Individual A opened the door, one of the offenders grabbed Individual A by his/her neck and pushed a gun into his/her back.

17. According to Victim 1, the group entered the apartment and encountered Individual B, Individual C and Individual D. Victim 1 was directed to the couch in the apartment's front room. BURNS ordered all other individuals to the front room. The offenders then turned the lights off. The offenders searched the house for shoelaces; ordered Individuals A, B, and D to lay face-down on the floor; and using shoelaces, tied Individuals A, B, and D's arms together behind their backs. The offenders ordered Victim 1 and Individual C to sit on the couch, untied.

18. According to Victim 1, BURNS left the front room and entered the front bedroom, where Individual A stayed. At this time, Victim 1 was able to identify the

driver of the Kia truck, who had taken off his face covering, as an individual s/he knew as "Ahzmi" (later identified as XHAMILTON).

19. According to Victim 1, XHAMILTON found a metal clothes hanger, heated it up over the stove, and then used the hanger to burn Individual A, which resulted in severe burns and serious bodily injury.

20. According to Victim 1, at some point thereafter, XHAMILTON threatened to kill Victim 1 if he didn't get the money.

21. According to Victim 1, in order to escape, Victim 1 ran through one of the front windows of the second-floor apartment, broke the glass and screen, pushed through, and fell two stories, landing on a spike of a wrought iron fence that surrounded the property.

22. According to Victim 1, as Victim 1 hung on the fence, s/he observed XHAMILTON jump out a second-story window on the side of the building.

23. On or about July 14, 2018, CPD presented photographic line-ups to Victim 1.

a. Victim 1 identified a photograph, from a photographic line-up, of defendant Christopher Gregory as one of the individuals who participated in Victim 1's robbery and kidnapping.

b. Victim 1 identified a photograph, from a photographic line-up, of defendant DERRIUS BURNS as one of the individuals who participated in Victim 1's robbery and kidnapping.

c.    Victim 1 identified a photograph, from a photographic line-up, of defendant AHZAMI XHAMILTON as one of the individuals who participated in Victim 1's robbery and kidnapping.

24.    On or about December 15, 2022, ATF presented a photographic line-up to Victim 1. Victim 1 identified a photograph, from a photographic line-up, of CALVERT WILLIAMS as the individual who drove the Kia Soul during the kidnapping. When asked if Victim 1 knew the individual's name, Victim 1 responded that he knew the individual by the nickname, "Little Boy."

### D.    Search of the Second-Floor Apartment and Recovery of the Taurus Firearm

25.    According to CPD reports, on May 18, 2018, CPD officers responded to a 911 call at Victim 1's residence. Upon arriving on scene, responding officers observed Victim 1 on the ground outside the residence with visible injuries to his/her right leg.

26.    Officers entered the residence's second-floor apartment and encountered Individuals A, B, C, and D. Individuals A, B, C, and D reported that a home invasion had just occurred.

27.    CPD officers recovered a revolver—specifically, a Taurus, model 85 Ultralite, .38 special caliber revolver, bearing serial number KT95437—near the rear staircase of the residence's second-floor apartment located on the 900 block of North Lawndale Avenue. Law enforcement swabbed the firearm for suspected biological evidence.

### E. Search of the Stolen Kia Soul and Recovery of the Latex Gloves and Steering Wheel Swab

28.    According to CPD records, on or about May 20, 2018, CPD detectives spoke with Victim 1 and learned that the offenders took his rented Kia Soul with Indiana license plate FL832ABE.

29.    On or about July 24, 2018, CPD officers responded to the Hertz Rental Car Company and processed the gray Kia Soul, bearing Indiana license plate FL832ABE, which was towed to Hertz on or about June 28, 2018 with no car keys.

30.    Law enforcement searched the Kia and recovered blue latex gloves from the rear driver's side floorboard and the rear passenger's side floorboard. Law enforcement also swabbed the Kia Soul's steering wheel for suspected biological evidence.

### F. Examination of Recovered Evidence

31.    The swabs from the steering wheel and firearm, along with the gloves, were sent to the Illinois State Police Laboratory for examination. According to the ISP Laboratory, DNA profiles were recovered from all of the items, and according to the ISP Laboratory, are suitable for comparison.

32.    The glove from the rear driver's side seat was examined by the ISP Laboratory and the DNA from one major male contributor was identified. That DNA

profile was entered into the Combined DNA Index System ("CODIS") and an association was made with a known profile for Gregory.[2]

33.     According to the ISP Laboratory, buccal swabs are needed to conduct a comparison with the recovered DNA from the evidence. Based on the above, buccal swabs from CALVERT WILLIAMS, AHZAMI XHAMILTON, and DERRIUS BURNS are needed so that the specimens provided can be compared to DNA recovered from the evidence described above.

---

[2] Based on my training and experience, I know that CODIS is a computer software program that contains a national database of DNA profiles. Forensic scientists can upload an unknown DNA profile into CODIS and the program will provide associations with known profiles, if they exist.

## III.   CONCLUSION

34.    Based on the above information, I respectfully submit that there is probable cause to believe that the **Subject Offenses** have been committed, and that buccal swab samples recovered from the persons of CALVERT WILLIAMS, AHZAMI XHAMILTON, and DERRIUS BURNS will provide evidence concerning the **Subject Offenses**. I therefore respectfully request that this Court issue a search warrant for buccal swab samples recovered from the persons of CALVERT WILLIAMS, AHZAMI XHAMILTON, and DERRIUS BURNS.

FURTHER AFFIANT SAYETH NOT.

PAUL DAOU
Digitally signed
by PAUL DAOU
Date: 2024.06.27
16:27:34 -05'00'

Paul Daou
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to and affirmed by telephone 27th day of June, 2024

Honorable MATTHEW F. KENNELLY
United States District Judge