

 JKS



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CALVERT WILLIAMS
a/k/a "Cal," "Lil'Boy"            )            Case No. 1:23-cr-00307
                                  )
            v.                    )
                                  )
UNITED STATES OF AMERICA          )

**MOTION TO DISQUALIFY / RECUSE PRESIDING JUDGE BASED ON ACTUAL BIAS AND APPEARANCE OF BIAS, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION**

COMES NOW the Defendant, appearing pro se / through counsel, and respectfully moves this court to disqualify and recuse the presiding Judge from further participation in this case. The facts set forth below demonstrate actual bias and, at minimum, an appearance of bias such that the Court's impartiality may reasonably be questioned, in violation of the Due Process Clause of the Fourteenth Amendment.

In support, Defendant states as follows:

I. GOVERNING STANDARD - SEVENTH CIRCUIT AUTHORITY

The Seventh Circuit has repeatedly held that recusal is required where a reasonable, well-informed observer would question the judges impartiality.

United States v. Balistrieri, 779 F.2d 1191 (7th Cir. 1985)
The court explained that the test is whether "a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits," and that recusal is required where impartiallity may reasonably be questioned.

PepsiCo. Inc. v. McMillen, 764 F.2d 458 (7th Cir. 1985)
The Seventh Circuit emphasized that the judiciary must avoid even the appearance of impropriety, because public confidence in judicial neutrality is essential.

Hook v. McDade, 89 F.3d 350 (7th Cir. 1996)
Recusal is necessary; where judicial conduct "creates an objective appearance of bias or partiality," including circumstances reflecting prejudgment or dismissive treatment of serious matters.

O'Regan v. Arbitration Forums, Inc., 246 F.3d 975 (7th Cir. 2001)
The court recognized that although bias often arises from extra-judicial sources, recusal may be warranted where comments or conduct reflect deep-seated favoritism or antagonism inconsistent with fair judgment.

1

In re Nettles, 394 F.3d 1001 (7th Cir. 2005)
The court required recusal where circumstances created an unaccep-
table risk of partial decision-making, stressing that recusal pro-
tects both litigants and institutional legitimacy.

Sullivan v. Conway, 157 F.3d 1092 (7th Cir. 1998)
The court reiterated that parties are entitled to a tribunal that
is not only impartial in fact but appears impartial to an objective
observer.

United States c. Boyd, 208 F.3d 638 (7th Cir. 2000)
The court held that recusal is appropriate where "a reasonable
person apprised of the circumstances would harbor doubts about the
judge's impartiality, "even absent proof of actual bias.

Collectively, these decisions establish that due process is violated
when a judge dismisses or trivializes serious allegations, prejudges
issues, or otherwise creates an appearance of hostility or bias
toward a party.

II. GOVERNIND DUE-PROCESS PRINCIPLES - U.S. SUPREME COURT

The U.S. Supreme Court has long held that due process guarantees
litigants a fair and neutral decision-maker, and that recusal is
required where circumstances create either actual bias or a proba-
bility / appearance of bias.

In re Murchison, 349 U.S. 133 (1955)
A fair trial in a fair tribunal is a basic requirement of due pro-
cess, and justice m;ust satisfy the appearance of justice as well
as it's reality.

Turney v. Ohio, 273 U.S. 510 (1927)
Due process is violated where circumstances create a possible temp-
tation for the judge not to hold the balance "nice, clear and ture."

Ward. v. Village of Monroeville, 409 U.S. 57 (1972)
Even absent proof of actual bias, recusal is required where there
existis a realistic potential for bias or influence undermining
neutrality.

Liteky v. United States, 510 U.S. 540 (1994)
Judicial remarks may require recusal where they reveal deep-seated
favoritism or antagonism that makes fair judgment impossible.

Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)
Due process is violated when the circumstances present a serious
and objective risk of actual bias, even without proof of subjective
bias.

Williams v. Pennsylvania, 579 U.S. 1 (2016)
An unconstitutional risk of bias arises where objective circumsta-
nces would cause a reasonable observer to question impartiality.

2

Rippo v. Baker, 580 U.S. 285 (2017)(per curiam)
The proper inquiry is whether, under an objective probability-of-bias , standard, the average judge in the same circumstances would be neutral.

Together, these cases establish that recusal is required whenever the facts create a constitutionally intolerable risk of bias or the appearance of bias - not only when actual bias is proven.

III. FACTUAL BASIS REQUIRING DISQUALIFICATION

A. First Counsel - Racially-Charged Statement and Judicial Trivialization

First appointed counsel made a racially-profiling and prejudicial statement to Defendant, stating:
"You've been shot before, right?"

When Defendant reported this to the Court, the Court stated that counsel _____," and referenced a comparison to the TV SHOW MR ROGERS' NEIGHBORHOOD, minimizing the discriminatory nature of the remark. (TR 7-29-25 PG 15 LN 14-19)

Counsel failed to file motions, refused to present motions prepared by Defendant, and ;withheld witness statements; these concerns were not meaningfully addressed, and counsel was removed only after counsel requested withdrawl.

These circumstances create, at minimum, an appearance of prejudgment and indifference toward discriminatory treatement of the Defendant, contrary to Murchison, Ward, Caperton,Balistrieri, Hook, and PepsiCo.

B. Second Counsel - Failure to Advocate During Serious Medical Risk & Dismissive Judicial Response

Defendant endured a twenty-four-day period without any bowel movement, constituting a serious medical risk.

Counsel failed to advocate for emergency medical care or raise the matter on the record.

When Defendant informed the Court, the Court stated:
-"you didn't die." (TR 12-16-25 PG 15 LN 21-25 & PG 16 LN 1-7)

Counsel thereafter filed motions without consultation, including a motion previously ruled unconstitutional; when Defendant objected, the Court stated that "the United States Supreme Court will rule on such matters," signaling prejudgment and dismissiveness.

The Court's statements trivialized a life-threatening medical condition and reflected antagonism toward Defendant's constitutional concerns, creating an objective probability of bias, contrary to Liteky, Williams, Rippo, O'Regan, Nettles, and Boyd.

## IV. APPLICATION OF SEVENTH CIRCUIT / SUPREME COURT STANDARD

Under the cumulative facts presented:

discriminatory conduct toward Defendant was minimized

a serious medical crisis was dismissed rather than addressed

failures of counsel to advocate were not meaningfully considered

judicial remarks reflect antagonism and prejudgment

A reasonable observer would question the Court's ability to remain neutral. Under Murchison, Caperton, Williams, Balistrieri, Hook, PepsiCo, Boyd and Rippo, continued participation of the presiding Judge presents and unconstitutional risk of bias and violates due process.

## V. REQUEST FOR RELIEF

WHEREFORE, Defendant respectfully requests that this Court:

Disqualify / recuse the presiding Judge from further participation in this case;

Alternatively, issue written findings addressing the incidents described herein to preserve the record for appellate review;

Ensure that Defendant's constitutional and medical concerns are addressed by a neutral tribunal; and

Grant such other and further relief as is just and proper.

ADDITIONALLY, Defendant respectfully requests court hearing transcripts where the judge made statements;

docket history showing counsel withdrawl;

jail / facility medical records, sick-call requests & grievance history; and

That no further substantive rulings be made until the motion to recuse is resolved.

Respectfully submitted,


Calvert Williams (Defendant)

4

1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA          )   Case No. 23 CR 307-1
                                  )
         v.                       )
                                  )
                                  )
                                  )
CALVERT WILLIAMS, et al.,         )   Chicago, Illinois
                                  )   January 8, 2026
                Defendants.       )   1:23 p.m.


TRANSCRIPT OF PROCEEDINGS - MOTION
BEFORE THE HONORABLE MATTHEW F. KENNELLY

APPEARANCES:

For the Government:     HON. ANDREW S. BOUTROS
                        UNITED STATES ATTORNEY
                        BY:   MS. SIMAR KAUR KHERA
                        219 S. Dearborn Street, 5th Floor
                        Chicago, Illinois 60604


For Defendant
Derrius Burns:          NISHAY SANAN, ESQ.
                        BY:  MS. CECE WHITE
                        53 W. Jackson Boulevard, Suite 1424
                        Chicago, Illinois 60604




Court Reporter:         CAROLYN R. COX, RPR, F/CRR
                        Official Court Reporter
                        219 South Dearborn Street, Room 2102
                        Chicago, Illinois  60604
                        c.cox.courtreporter@gmail.com



                  *   *   *   *   *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

2

APPEARANCES (Cont'd):

Pro Se Defendant:          MR. CALVERT WILLIAMS
                           56325-510
                           MCC Chicago
                           71 W. Van Buren Street
                           Chicago, Illinois 60605


Standby Counsel for
Calvert Williams:          FOLEY AND FOLEY
                           BY:  MS. DONNA ANN HICKSTEIN FOLEY
                           9644 S. Hamilton Avenue
                           Chicago, Illinois 60643

(Proceedings heard in open court:)

THE CLERK: Case 23 CR 307, USA v. Williams and Burns.

THE COURT: Do you want them sitting at the table?

Everybody can just sit down. That's fine. You don't have to stay standing up. Sit down. Yeah. They'll tell you where they want you to go.

Okay. If you need to talk, just make sure you're talking into a mic.

Okay. So can the government's lawyers give your names, please.

MS. KHERA: Good afternoon, your Honor. Simar Khera and Jared Jodrey on behalf of the United States.

THE COURT: Ms. White.

MS. WHITE: Good afternoon, your Honor. Cece White on behalf of Derrius Burns, who is present in court.

THE COURT: And Mr. Williams is present, as is standby counsel.

Give your name for the record.

MS. FOLEY: For the record, Donna Foley, standby counsel, your Honor.

THE COURT: Okay. So the trial had been -- or was set for the -- I think the 2nd of February, and I alluded at least at Mr. Williams' last date that I was going to have to move that because of a family issue that's going to require me to be away from court the week of the 9th and probably most of the

week of the 16th. And so I wanted to get everybody here at the same time. And so what we're going to start off with is I want to get scheduling information from people, where the conflicts are.

So starting with you guys.

MS. KHERA: Judge, I currently have an April 6th trial scheduled before Judge Kness that I think will likely move, so April may free up.

THE COURT: April 6 may move. Okay.

MS. KHERA: Yes.

And then I have the trial before your Honor March 16th with defendant Saul Hernandez.

THE COURT: Oh, that's Hernandez. Okay.

I'm trying to remember. Does that one look like it's going or not?

MS. KHERA: As of now, Judge, I can't give you an answer on that. I'm not sure.

THE COURT: Okay. But at least that date I have some control over.

What about you, Mr. Jodrey?

MS. KHERA: I have a two-week murder-for-hire trial in front of Durkin, Judge Durkin, beginning July 6th, and then another two-week -- basically separate defendants, another two-week trial also in front of Judge Durkin beginning August 3rd.

THE COURT: All right. Ms. White, you and Mr. Sanan, I'm assuming, is who we're talking about here.

MS. WHITE: Yes, that's correct, your Honor.

I will be out for maternity leave starting at the end of March until mid August. I would prefer to try the case after I have returned. Of course, we understand if that is an issue for your Honor.

But Mr. Sanan would also have conflicts. We have a trial scheduled -- two trials scheduled in May, so we could not do a date in May; we have a trial scheduled at the end of August that may or may not proceed; and we have a trial in --

THE COURT: So, basically, what you're telling me is I can't set a trial date.

MS. WHITE: Our request would be a trial date in September to accommodate --

THE COURT: You were just about to tell me that you had stuff after August.

MS. WHITE: No, Mr. Sanan has a trial at the beginning of August, but then my conflict is in August. I won't be back --

THE COURT: When are your -- and I know that these things are not always a hundred percent predictable -- in what part of March are you expected to be out?

MS. WHITE: I will likely not be able to try the case later than the trial date we originally had set, your Honor.

6

But if your Honor wants it to take place, Mr. Sanan will make himself available, but he is out of town up until March 8th.

So I know that March 9th had at one point been proposed, but Mr. Sanan will be getting in late on the 8th, so I don't think he could make it to Chicago on time to start that morning.

THE COURT: And Ms. Foley is standby counsel, but I want to find out what her schedule is too.

MS. FOLEY: Your Honor, I'm wide open. There is no conflict.

THE COURT: Okay. So I'm going to tell you what I'm contemplating here, and there may be more than one reason to do this.

One has to do with -- one but not the only one that has to do with the scheduling issues on Mr. Sanan and Ms. White's part.

The other has to do with the fact that at the moment, at least, Mr. Williams is pro se. And so what I'm sitting here thinking, and I had given this some thought before because I thought -- I had a vague recollection in my head that there -- I didn't remember your maternity leave issue, but I knew that there was some issue out there.

What I'm thinking here is, and I know this is not a great solution for the government and maybe not for me either, is a severance in setting Mr. Williams' case sooner and then

setting Mr. -- the other defendant's case later. Sorry, I just blanked on the name momentarily.

MS. KHERA: Mr. Burns, Judge.

THE COURT: Yeah. Right.

MS. KHERA: And, Judge, the government would object to that. There have been delays in this case attributable specifically to Mr. Williams and his run-through of defense attorneys, which is part of the reason we have moved prior trial dates.

And so we would object to severing the trial to benefit Mr. Williams when he --

THE COURT: That's not what it's to benefit. It's actually not.

MS. KHERA: It would be to the government's detriment to sever these defendants. We have civilian victims, Judge, who were traumatized and terrorized by the defendants who would be forced to testify twice, and that is a huge detriment to the government and fundamentally unfair to those victims to force them to come in twice.

THE COURT: All right. Give me just a second to look at something here.

You said you had a trial April 6th currently but it may go away.

MS. KHERA: Yes, Judge.

THE COURT: And, Mr. Jodrey's first -- the two

conflicts of yours was in July, right?

MS. KHERA: That's correct.

THE COURT: Okay.

Sorry. It just takes a second for me to readjust my calendar so I can look ahead.

If I can ask Mr. Williams a question.

So, Mr. Williams, as you sit there right now, has your thinking changed on not wanting to have Ms. Foley represent you at trial?

THE DEFENDANT: Yes.

THE COURT: I said that in kind of a backhanded way. Let me say it in an easier way to understand.

You had previously told me you did not want Ms. Foley to be your lawyer. And we went through, you know, a couple hearings and most recently the last one where I explained to you why I was not going to appoint another lawyer on the case. And we went over the pros and cons, mostly the cons, of representing yourself.

So as you sit here right now, have you changed your mind about that at all?

THE DEFENDANT: No.

THE COURT: Okay. I just don't see a viable reason for holding Mr. Williams' case off until late August, which is essentially what I'd have to do.

THE DEFENDANT: I was trying to say -- I was trying to

say --

THE COURT: Yeah.

THE DEFENDANT: -- I was trying to go to the law library to look over my discovery. They said you have to have sensitive discovery down there, and they say I don't have it.

THE COURT: I don't understand. Say it again.

THE DEFENDANT: The discovery. I'm supposed to have all the statements that was --

THE COURT: Some of it you don't have is what you're telling me.

THE DEFENDANT: I don't have none of it. So they say I can't get --

THE COURT: So, no, let's be clear about this.

You're telling me you have zero discovery that you can see? There's not a single piece of paper that you can look at? That's what you're telling me?

THE DEFENDANT: Yes. They got --

THE COURT: Why haven't you told me that before? You've never told me before that you couldn't look at --

THE DEFENDANT: I'm talking about the statements that was made against me --

THE COURT: Listen to the question.

You just said a minute ago that you had zero discovery that you could look at. You're saying that there's some discovery that you can't look at because they're saying that's

sensitive.

Am I understanding that right?

THE DEFENDANT: No, it's just not down there. I don't have it.

THE COURT: Okay. Listen to my question because I need to get an answer to my question.

You're saying that some of the discovery they don't have because it's sensitive and you don't have access to it without a court order.

Am I understanding you right?

THE DEFENDANT: No, they said it's not down there, period. It's nothing down there.

THE COURT: It's not -- what's not down there?

THE DEFENDANT: The discovery that's supposed to be in the law library. It's not down there. It's not --

THE COURT: You've never -- from the day this case began two years ago to now, you've never looked at a piece of -- at a single piece of discovery?

THE DEFENDANT: Not the statements that was made against me, no.

THE COURT: But you've looked at other stuff?

THE DEFENDANT: The police reports.

THE COURT: Okay. That's what I'm trying to ask you.

So there's some stuff --

THE DEFENDANT: Oh, yeah.

THE COURT: -- that you've seen, there's some stuff that they don't have over there.

THE DEFENDANT: Yeah.

THE COURT: On the stuff that you don't have -- that they don't have over there, they're telling you that that's because it's sensitive and you need a court order?

THE DEFENDANT: No, they saying it's not down there. They saying nothing is down there. So they didn't send nothing over. That's what --

THE COURT: Something's down there because you said you looked at police reports. How did you look at the police reports?

THE DEFENDANT: It's part of my discovery. They gave it to me. They gave it to me.

But like the statements that's been made against me, y'all said I couldn't have them.

THE COURT: I didn't say anything. I never said anything like that.

MS. KHERA: Judge, could I maybe shed some light here?

THE COURT: Yeah.

MS. KHERA: There is discovery that was tendered directly to defendant that is not sensitive materials, and there are sensitive materials that are being held at the law library that Mr. Williams can review at any time so long as he makes an appointment at the law library to review it. But he

12

cannot take that material back to his cell.

That's the same for all four defendants. We produced it in the same way --

THE COURT: And Mr. Williams seems to be telling me that's it's not even in the law --

THE DEFENDANT: That's what I'm telling you.

MS. KHERA: If I could continue, please.

This has been addressed several times in front of your Honor --

THE COURT: I know it has.

MS. KHERA: -- where he has complained of not having access to his discovery.

We have sent the discovery, in an abundance of caution, more than once, again, to the jail to ensure that he has it.

And when Ms. Foley came into the case, your Honor specifically directed both the government and Ms. Foley to confer and ensure that all of the discovery was at the jail so that Mr. Williams would have access to it.

At that time, I reached out to the MCC, and the MCC let me know that not once had Mr. Williams requested from the law library to have access to that sensitive material that was being stored there.

And then Ms. Foley separately -- and she can confirm if I'm wrong here -- but I believe she filed a status report

letting your Honor know this too that she confirmed that Mr. Williams did have access to all of the discovery as well, the same discovery that she had. And Ms. Foley can correct me if I'm wrong about that.

MS. FOLEY: That's correct.

MS. KHERA: So these are issues that your Honor --

THE COURT: So wait a second.

So, basically, what you're telling me as far as the, quote/unquote, sensitive material is concerned, it's there.

MS. KHERA: Yes.

THE COURT: Mr. Williams is not prohibited from seeing it. He can see it. He just has to make an appointment to see it.

MS. KHERA: Yes. And he just cannot remove it to take it back to his cell, but --

THE COURT: He can't take it back with him, but he can --

MS. KHERA: Yes.

THE COURT: -- he has to look at it in the law library.

MS. KHERA: And I'm happy to check with the MCC again if somehow they threw away his discovery since --

THE COURT: No, that's consistent with what you've told me before.

And you're telling me that's a lie, basically?

THE DEFENDANT:  That's exactly what I'm telling you, and you can look at it for yourself.  I just filled out for the law library.  They said I don't have nothing down there.

THE COURT:  Here's the deal.  I can't look at it for myself because I'm not there.

So what would I look at if I was looking at it for myself?

You just said I could look at it for myself.  How would I do that?

THE DEFENDANT:  I mean, you got the computer.  I mean, I figure you can just go in there, and --

THE COURT:  No, no.  I don't have access to what's at the MCC on my government computer.  I do not.  It doesn't work that way.  I don't have access to that stuff.  I have access to stuff that's in the court.  I don't have access to anything over there.

So how can I look for myself?

THE DEFENDANT:  Well, that's what I thought.  I thought you could do that.

But like she said, she's said she going to check, and she can see that I filled out forms.  They said I don't have nothing down there.

So she can see for herself.  She just said she going to do it.  She --

THE COURT:  Here's what I need.

15

THE DEFENDANT: There's nothing down there for me.

THE COURT: Here's what I need. I'm going to -- I was in the middle of a sentence here, but -- just a minute. Let me see how far along I got.

Okay. The two defendants' cases are severed for purposes of trial. And I'm re-setting Mr. Williams' trial to April the 27th, and I'm re-setting Mr. Burns' trial to -- when in August?

MS. WHITE: Well, your Honor, we have a trial on August 24th, but it's a backup date before Judge Rowland.

THE COURT: I'm setting it for August 24th.

MS. WHITE: Okay.

MS. KHERA: Judge, could I make one request?

THE COURT: No, you can't. I'm done with this.

And the next thing I want is I want filed by Tuesday, I want filed by Tuesday, a status report from the government that gives me something that's signed by somebody over at the MCC so I have somebody I can yell at if they're wrong from over there that tells me exactly what is where, what Mr. Williams has to do to get it, and how often he has tried to request it, and on what dates. That's what I need. I need that on Tuesday.

MS. KHERA: No problem, Judge.

THE COURT: Okay. So now, Mr. Williams, you have more time to prepare. You've got until April the 27th.

I'm going to set Mr. Williams' case for another status at the end of next week so that we can address this issue with what Ms. Khera is going to get from the MCC.

And so the next date is going to be the 15th at -- I think I got to do it in the morning, though, so give me just a second to check.

The 15th at 9:45.

Time's excluded through that date as to both defendants in the interest of justice.

And, actually, I need one of you guys over -- I need just counsel for Mr. Burns over here too in case something comes up that requires me to move the trial date again.

MS. WHITE: No issue, your Honor.

THE COURT: It would just be scheduling on that.

So time is excluded as to both defendants through that date.

Okay. Bye.

(Adjourned at 1:38 p.m.)

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

/s/ Carolyn R. Cox                                    March 19, 2026
Carolyn R. Cox, RPR, F/CRR
Official Court Reporter

CALVERT WILLIAMS 56325-510
METROPOLITAN CORR. CTR.
71 W VAN BUREN ST.
CHICAGO, IL 60605



RECEIVED

APR 10 2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

04/10/2026-6





CIRCUIT CLERK OF THE U.S. DISTRICT COURT
NORTHERN DIST. OF ILLINOIS EAST DIV
219 S. DEARBORN ST      20TH FLOOR
CHICAGO, IL    60604

LEGAL MAIL

'APR 10 REC'D

METROPOLITAN CORRECTIONAL CENTER

7

The enclosed letter was processed through special mailing procedures for forwarding to you.
This letter has neither been opened nor inspected.

APR 07 2026

If the sender raises a question or problem over which this facility has jurisdiction,
you may wish to return the material for further information or clarification,
if the sender encloses correspondence for forwarding to another addressee,
please return to the enclosure to the above address.